# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1460

Galaxy Wireless, LLC,
Respondent,

vs.

Western National Mutual Insurance Company,
Appellant.

**Filed June 24, 2024**
**Affirmed**
**Segal, Chief Judge**

Hennepin County District Court
File No. 27-CV-20-14245

Edward E. Beckmann, Beckmann Law Firm, Bloomington, Minnesota (for respondent/cross-appellant Galaxy Wireless, LLC)

Charles E. Spevacek, Julia J. Nierengarten, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota; and

Anthony J. Kane, Hilary R. Hannon, Pfefferle Kane, LLP, Minneapolis, Minnesota (for appellant/cross-respondent Western National Mutual Insurance Company)

Considered and decided by Bratvold, Presiding Judge; Segal, Chief Judge; and Frisch, Judge.

## SYLLABUS

Unless otherwise provided for in a fire-insurance policy, total-loss coverage under Minnesota Statutes section 65A.08 (2022) applies only to total loss of a building, not loss of an insured-lessee's tenant improvements to leased premises in a building.

## OPINION

**SEGAL**, Chief Judge

In this fire-insurance coverage dispute, appellant-insurer argues that the district court erred in denying insurer's posttrial motions for judgment as a matter of law (JMOL) or a new trial. By notice of related appeal, respondent-insured challenges the district court's determinations that (1) total-loss coverage under Minn. Stat. § 65A.08, does not apply to its claim for tenant-improvement damages, and (2) prejudgment interest did not begin to accrue until respondent's submission of its written proof of loss. We affirm.

## FACTS

In May 2018, a fire of unknown origin broke out in a commercial building in Minneapolis. The building had housed a shoe store until 2014, when the shoe store's president, who was also one of the building's owners (hereafter, the building owner) decided to close the store and subdivide the building for tenants. In January 2015, respondent Galaxy Wireless, LLC leased street-level retail space and basement storage space in the building. At the time of the fire, Galaxy was operating a store that sold and repaired cellphones for individual customers and provided wholesale services for other small cellphone stores in the area. Ali Mansour owned the business and managed it along with his brother, Khalaf (David) Mansour. Galaxy was insured under a policy issued by appellant Western National Mutual Insurance Company.

The fire rendered the building unsafe and no one was permitted to go inside. The building was demolished shortly after the fire due to public-safety concerns. Following the demolition, the site was excavated. Nancy Jacobson, Western's director of special

2

investigations, and Peter Dahl, a certified fire inspector retained by Western, attended the excavation on behalf of Western. Dahl was allowed into the area being excavated, while Jacobson observed from the sidelines. The excavation uncovered, among other things, one filing cabinet with approximately 115 cellphones stored inside. The filing cabinet and cellphones belonged to Galaxy and were located in what was its basement storage area.

In January 2019, Galaxy submitted a sworn proof of loss averring that it suffered in excess of two million dollars in covered losses under the policy, including $445,000 for tenant improvements. Galaxy subsequently prepared a list of the claimed improvements, which included electrical work and removing, repairing, or installing floor tiles, the ceiling, a partition wall, windows, doors, slatwall panels, bathroom fixtures, and an HVAC system. Galaxy also prepared an inventory of its lost business personal property. In the inventory, Galaxy claimed lost business personal property, including more than 4,000 cellphones, nearly 900 of which were purportedly stored in the basement.

The policy obligated Western to "pay for direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." There is no dispute that the fire is a "Covered Cause of Loss." As relevant here, the "Covered Property" set out in the policy included "Buildings" and "Business Personal Property." And the policy explicitly listed tenant improvements as a form of "Business Personal Property." But the policy contained an exclusion that states Western "will not pay for any loss or damage if any insured has . . . [a]fter a loss, willfully and with intent to defraud . . . concealed or misrepresented any material fact or circumstances concerning . . . [t]he Covered Property . . . [or a] claim under this policy."

3

Western denied Galaxy's claim in its entirety. Western advised that the denial was "based on material misrepresentations contained in Galaxy's Tenant Improvements claim, material misrepresentations contained in Galaxy's Business Personal Property claim, and material misrepresentations made by Ali Mansour and David Mansour during their respective [examinations under oath]." Galaxy then initiated this lawsuit against Western in November 2020, alleging claims of breach of the insurance contract and seeking recovery of its losses from the fire, among other claims. Western filed an answer and counterclaim, seeking a declaration that it was not obligated to pay for any damage resulting from the fire due to material misrepresentations made by Galaxy relating to the insurance claim.

After the close of discovery, Western moved for summary judgment, and Galaxy moved for partial summary judgment, claiming it was entitled to total-loss coverage under section 65A.08 of the Minnesota Statutes and the policy. The district court denied both motions.

The case proceeded to a jury trial in January 2023 on Galaxy's breach-of-contract claim and Western's intent-to-deceive defense.[1] Prior to trial, Galaxy brought a motion in limine to preclude Western from calling Dahl as a witness because Western did not disclose Dahl as an expert and had objected to the disclosure of his opinions, claiming they were privileged as attorney work product. The district court granted the motion and ordered that "Western National may not present undisclosed expert testimony at trial, nor

---

[1] All other claims were resolved before trial.

may Western withhold evidence during discovery based upon a claim of attorney work product, and then present such evidence at trial."

Western nevertheless sought to call Dahl as a witness at trial. Western argued that Dahl should be permitted to testify as a fact witness and that his testimony would be limited to "his observations of the excavation of the basement." The district court decided to "take it question by question" and permitted Dahl to testify but cautioned Western not to elicit testimony from Dahl precluded by the pretrial ruling. After Dahl testified at trial, Galaxy moved to strike his testimony on the grounds that it inevitably involved Dahl's expertise as a fire inspector and thus violated the court's prior ruling. After hearing the parties' arguments, the district court granted Galaxy's motion to strike and instructed the jury to disregard the entirety of Dahl's testimony.

The jury returned a verdict in favor of Galaxy. In its answers on the special-verdict form, the jury found that Western breached its contract of insurance with Galaxy and awarded the following damages: tenant improvements, $100,000; business personal property, $1.1 million; business income and extra expenses, $1.2 million; money and security inside premises, $10,000; personal property of others, $49,000; and outdoor signs, $20,000, for a total of $2,479,000. The individual sums awarded by the jury were equal to the amount sought by Galaxy for each category of loss except tenant improvements. For that category, Galaxy claimed it had damages of $445,000, but the jury awarded only $100,000.

On the issue of Western's intent-to-deceive defense, the jury answered "Yes" to the question on the special-verdict form whether Galaxy made any misrepresentations in its

5

insurance claim to Western. But the jury answered "No" to the question whether Galaxy "ma[d]e any misrepresentation willfully or intentionally, intending to deceive Western National."

The district court subsequently entered judgment in favor of Galaxy in the amount of $2,479,000 and ordered that "[p]rejudgment interest shall be calculated upon determination of the appropriate date of Galaxy's first written notice of loss." Western filed posttrial motions for JMOL or a new trial. Western asserted it was entitled to JMOL because there was insufficient evidence of damages and the jury's answers on the special-verdict form were inconsistent and irreconcilable. Western argued, in the alternative, that it was entitled to a new trial because the district court made erroneous evidentiary rulings and gave improper jury instructions, and because the jury's verdict was irreconcilable. Galaxy opposed the motions and asserted that prejudgment interest should be calculated as of May 30, 2018—the date the Mansours met with Western's independent adjuster and discussed the claims process—or, in the alternative, January 10, 2019—the date Galaxy submitted its sworn proof of loss. Western opposed any award of prejudgment interest but argued that, if prejudgment interest was to be awarded, it should be calculated as of the date Galaxy commenced suit.

The district court, in a thorough, carefully analyzed order, denied Western's posttrial motions and set the accrual date for prejudgment interest as January 10, 2019, reasoning that this was the first date that Galaxy had communicated a specific amount of monetary loss to Western.

6

Western appeals the district court's denial of its posttrial motions seeking reversal of the judgment or a new trial. By notice of related appeal, Galaxy challenges the district court's denial of its claim seeking the policy limit for tenant-improvement losses and the district court's determination that prejudgment interest did not begin to accrue until the date that it submitted its proof of loss to Western.

## ISSUES

I.  Did the district court err in denying Western's motion for judgment as a matter of law?

II.  Did the district court abuse its discretion in denying Western's motion for a new trial?

III.  Did the district court err in determining that Galaxy is not entitled to recover the policy limit on its claim for tenant-improvement losses without being required to prove damages?

IV.  Did the district court err in determining the accrual date for prejudgment interest?

## ANALYSIS

**I.  The district court did not err in denying Western's motion for judgment as a matter of law.**

If a party moves for JMOL after a jury returns a verdict, the district court may "(1) allow the judgment to stand, (2) order a new trial, or (3) direct entry of judgment as a matter of law." Minn. R. Civ. P. 50.02. We review de novo the denial of a JMOL motion. *Vermillion State Bank v. Tennis Sanitation, LLC*, 969 N.W.2d 610, 618 (Minn. 2022). In assessing a district court's ruling on a JMOL motion, we view the evidence in the light most favorable to the nonmoving party. *Id.* "We affirm the denial of a [JMOL motion] unless no reasonable theory supports the verdict." *Id.* at 618-19. "This means that to

7

reverse, the evidence must be so overwhelming on one side that reasonable minds cannot differ as to the proper outcome." *Id.* at 619 (quotations omitted).

Western's appeal of the district court's denial of its JMOL motion focuses on Galaxy's claim for tenant-improvement damages. Western argues that the district court erred by failing to grant JMOL to Western because the jury's award of damages for tenant improvements lacked evidentiary support and was based on nothing more than speculation. Western also argues that the district court erred because the jury's finding of misrepresentation by Galaxy, and its substantially reduced award for tenant-improvement damages to less than one-fourth of the amount sought by Galaxy, cannot be reconciled with the jury's determination that Galaxy lacked the intent to deceive. Western maintains that, based on the evidence and the jury's finding that Galaxy made misrepresentations, it is entitled as a matter of law to a determination that Galaxy acted with an intent to deceive, which voids the policy. We address each argument in turn.

A.      Basis for Jury's Award of Tenant-Improvement Damages

Western argues that, because Galaxy provided just a lump sum total of $445,000 for its claimed tenant-improvement damages with no breakdown of those damages, the jury had no "reliable basis to conclude that [Galaxy] was entitled to *some* damages but not the full amount requested." Western maintains that the jury's reduced award of $100,000 was thus based on nothing but speculation and must be reversed.

The burden is on the plaintiff to "establish a reasonable basis for approximating a loss." *DeRosier v. Util. Sys. of Am., Inc.*, 780 N.W.2d 1, 5 (Minn. App. 2010). "[A]n owner's testimony as to the value of his property is competent evidence" for the jury to

8

consider in assessing a claim for damages. *Johnson v. Garages, Etc., Inc.*, 367 N.W.2d 85, 87 (Minn. App. 1985) (citing *Lavalle v. Aqualand Pool Co.*, 257 N.W.2d 324, 328 (Minn. 1977)). "Damages cannot be speculative, remote, or conjectural." *DeRosier*, 780 N.W.2d at 5 (quotations omitted). But appellate courts "will not disturb a damage award unless the failure to do so would be shocking or would result in plain injustice." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 555 (Minn. 2008) (quotation omitted).

At trial, the jury heard conflicting testimony from the building owner and the Mansours about who paid for various improvements in Galaxy's leased premises. Galaxy claimed that it made substantial improvements to its leased premises, estimating the cost at $445,000. It submitted into evidence at trial a number of photographs allegedly depicting the improvements, and David Mansour testified as to his estimate of the costs of the improvements. But as Western points out, Mansour's testimony was not supported by any receipts, invoices, or other written evidence of the cost of the improvements. Mansour testified that "all the invoices, all the paper [about the improvements] was in the store and destroyed in the fire." He explained that he arrived at the $445,000 figure after thinking "about how much money was spent there." He did not provide a breakdown of the $445,000 figure or additional details about the costs of specific improvements.

Western called the building owner as a witness at trial to counter Mansour's estimate. The building owner testified that he, not Galaxy, was responsible for many of the improvements claimed by Galaxy, including installing a partition wall, new flooring, and a ceiling, renovating the bathrooms, installing the HVAC system, and performing the electrical work. He further testified that he hired the contractor, paid for the improvements,

9

and did not bill Galaxy for the cost. But when the building owner was cross-examined, he acknowledged that Galaxy did install some tiling and solid wood and made some improvements above the door and to the walls with sheetrock and drywall. He also admitted he was unsure about some of the other claimed improvements.

The district court concluded that "Galaxy's damages evidence was not so speculative as to preclude recovery." We agree. As outlined above, the jury heard conflicting evidence on the claimed tenant improvements, but the building owner ultimately acknowledged that Galaxy did perform several of the claimed improvements. And as noted by the district court, David Mansour explained that the fire destroyed Galaxy's documentation of its expenditures for the improvements and Galaxy "offered many photographs to illustrate [David Mansour's] testimony."

Given the largely undisputed evidence that at least some tenant improvements were made by Galaxy, it was not outside the jury's authority to award damages that the jury determined were proportionate based on the evidence presented. Thus, viewing the evidence in the light most favorable to Galaxy, we discern no "plain injustice" in the jury's award. *Id.* (quotation omitted).

## B. Intent to Deceive

Western next argues that the district court erred in denying its JMOL motion because the evidence presented supports only one reasonable conclusion—that Galaxy "intentionally mispresented its tenant improvement losses" and that this constitutes an intent to deceive as a matter of law. Western maintains that its evidence was overwhelming on the issue of misrepresentation and that the jury's answers on the special-verdict form

10

are irreconcilable such that the jury's finding that there was no intent to deceive must be set aside. But "[i]f answers on a special verdict form 'can be reconciled on *any* theory' consistent with the evidence and the fair inferences drawn from the evidence, 'the verdict will not be disturbed.'" *650 N. Main Ass'n v. Frauenshuh, Inc.*, 885 N.W.2d 478, 486 (Minn. App. 2016) (quoting *Dunn*, 745 N.W.2d at 555) (other quotation omitted), *rev. denied* (Minn. Nov. 23, 2016). "The burden of proving that a misrepresentation was made with intent to deceive or defraud the insurer rests on the one who asserts it." *Craigmile v. Sorenson*, 80 N.W.2d 45, 51 (Minn. 1956).

Western maintains that, because "the jury awarded [only] a small fraction of the value Galaxy claimed,"—$100,000 instead of $445,000—"the only conclusion can be that Galaxy intentionally misrepresented its claim," and thereby had an intent to deceive. But a misrepresentation can be made negligently and not with an intent to deceive. *See, e.g.*, *Florenzano v. Olson*, 387 N.W.2d 168, 174-75 (Minn. 1986) (distinguishing between "intentional and negligent misrepresentation[s]" and determining the case involved a "negligent, not fraudulent misrepresentation"); *see also Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 654 (Minn. 1986) (stating "only willful or intentional misstatements calculated to deceive the insurer operate to void the policy"). In apparent recognition of this fact, the special-verdict form, which was agreed to by Western, divided the issue of misrepresentation and intent to deceive into two separate questions: one question asked whether Galaxy made any misrepresentations and

11

a second question asked whether any such misrepresentations were made with an intent to deceive.[2]

Western cites *Hodge v. Franklin Insurance Co. of Philadelphia* to support its argument that a large discrepancy between the amount of damages claimed and the amount awarded is dispositive evidence of intentional deception. 126 N.W. 1098 (Minn. 1910). *Hodge* held that a large discrepancy may serve as evidence of fraud, but that the question of whether a misrepresentation was made with an intent to deceive is a fact issue for the jury. *Id.* at 1099. The supreme court explained:

> A discrepancy, even if a very considerable proportion, between the amount stated by the insured in the proofs of loss and the value found by the jury, does not conclusively establish fraud or false swearing; but it remains a question of fact whether the valuation was intentionally fraudulent or merely an error of judgment. A very large discrepancy, however, is some evidence of fraud.

*Id.* (quotation omitted). The supreme court reached this conclusion even though some of the claims made by the insured in that case "were considerably overvalued." *Hodge* thus squarely supports that the determination of whether a misrepresentation is made with intent to defraud is a fact question for the jury.

Western also cites to a prior opinion of this court, *Collins v. USAA Property and Casualty Insurance Co.*, 580 N.W.2d 55 (Minn. App. 1998). But in contrast to this case, the jury in *Collins* expressly found that the insureds misrepresented their personal-property

---

[2] There was also a third question on the special-verdict form asking whether any misrepresentations were material. The jury did not answer this question because they were instructed to skip that question on the form if they found no intent to deceive.

losses "with the intent and purpose of deceiving [the insurer] of material facts and circumstances." 580 N.W.2d at 56. We held that the jury's finding of a material misrepresentation with intent to deceive voided the whole policy. *Id.* at 58. *Collins* thus also fails to support Western's argument.

As the district court noted, the evidence here is such that the jury could have reasonably found that Galaxy had an intent to deceive Western. But there was also evidence presented by Galaxy that allowed the jury to find to the contrary. We are thus left with the inevitable conclusion that Western simply failed to persuade the jury that Galaxy's misrepresentations were made with an intent to deceive. We therefore conclude that the jury's answers are not irreconcilable. And, like the district court, we discern no basis to overturn the jury verdict on this ground.

## II. The district court did not abuse its discretion in denying Western's motion for a new trial.

Western next challenges the district court's denial of its posttrial motion for a new trial. "We review a district court's decision to grant or deny a new trial for an abuse of discretion." *Christie v. Est. of Christie*, 911 N.W.2d 833, 838 (Minn. 2018). Western argues that it should have been granted a new trial because the district court made evidentiary errors in striking the testimony of Peter Dahl, Western's fire inspector, and allowing Galaxy to question the building owner about the building's fire-insurance coverage. Western also argues that it was entitled to a new trial because the district court abused its discretion in providing a jury instruction related to honest mistake and, as argued

13

in its JMOL motion, because the jury's verdict is irreconcilable. We begin our analysis with Western's challenge to the district court's evidentiary rulings.

## A. Evidentiary Rulings

Appellate courts "review evidentiary rulings of the district court, including the admission of expert testimony, for an abuse of discretion." *City of Moorhead v. Red River Valley Coop. Power Ass'n*, 830 N.W.2d 32, 39 (Minn. 2013). Even if a party demonstrates "[a]n improper evidentiary ruling resulting in the erroneous admission of evidence," such an error "will only compel a new trial if it results in prejudicial error to the complaining party." *George v. Est. of Baker*, 724 N.W.2d 1, 9 (Minn. 2006). "An evidentiary error is prejudicial if it might reasonably have influenced the jury and changed the result of the trial." *Kedrowski v. Lycoming Engines*, 933 N.W.2d 45, 62 (Minn. 2019) (quotation omitted).

*Decision to Strike Testimony of Peter Dahl*

Western argues that the district court committed prejudicial error by striking Dahl's testimony as undisclosed expert testimony. Western asserts that it "never hid that it would call Dahl as a fact witness at trial" and that the district court's decision to strike the testimony caused "significant unfair prejudice . . . primarily tak[ing] the form of depriving [Western] of valid, admissible witness testimony presenting credible information about the lack of evidence supporting Galaxy's claims." We are not persuaded.

Dahl was hired by Western as an expert fire inspector, but Western never disclosed Dahl's opinions to Galaxy. In fact, during the deposition by Galaxy of one of Western's employees, Western's counsel directed the witness not to answer a question about Dahl's

14

conclusions on the ground of attorney work product. Because Western never disclosed Dahl's opinions to Galaxy, the district court granted Galaxy's motion in limine to exclude any expert testimony by Dahl, a ruling not contested by Western on appeal.

In response to Western's assertion that Dahl would be asked to testify only as a fact witness concerning his observations of the excavation site, the district court stated that it would allow Dahl to testify in that limited capacity, but warned Western that it would scrutinize the propriety of Dahl's testimony on a "question by question" basis. When Dahl testified not just about the photographs he took during the excavation, but what he observed about fire damage and other matters, the district court determined that his testimony bled over into expert testimony and ordered that Dahl's testimony be stricken from the record. The district court explained in its order denying Western's motion for a new trial that Dahl's observations "were not the observations of a lay passerby who happened to see the excavation process. He undoubtedly was looking for and saw things that an ordinary fact witness would not have noticed or understood."

We discern no abuse of discretion in the district court's ruling. Dahl was an expert fire inspector working on behalf of Western. Western did not disclose Dahl's opinions to Galaxy during discovery and did not even identify him as a witness it intended to call at trial except by a general reference to persons Western identified as having relevant knowledge in its initial disclosures. Western also advised Galaxy during discovery that, if it desired to take Dahl's deposition, it would have to pay Dahl's hourly rate and expenses. Based on these facts and a review of Dahl's stricken testimony, we conclude that the district court acted within its discretion in determining that Dahl's observations during the

15

excavation were intertwined with his expertise and went beyond the testimony of a mere fact witness.

In addition, we are not persuaded that the decision to strike Dahl's testimony prejudiced Western in any significant way. Dahl testified about a filing cabinet that contained 115 cell phones, whether he observed any snowblowers or business signs in the rubble that Galaxy claimed were lost in the fire—he did not—and his observations about a slat wall. But Nancy Jacobson—Western's director of special investigations—was also present during the excavation and testified at trial. Her testimony included information about the number of cellphones recovered from the filing cabinet and observations about the slat wall and whether she observed snowblowers or signs. Moreover, 21 photographs taken by Dahl of the site were admitted into evidence and were available to the jury. Jacobson also referred to and testified about at least a couple of Dahl's photographs. It thus appears that Jacobson's testimony covered the same factual observations as were presented in Dahl's testimony.

Western contends that Dahl's testimony was not duplicative of Jacobson's testimony within the meaning of Minn. R. Evid. 403, which allows the exclusion of cumulative evidence. But whether Dahl's testimony was excludable as being needlessly cumulative under Minn. R. Evid. 403, is a separate issue from whether the exclusion of the testimony caused prejudice. And the fact that Jacobson's testimony referenced the same items that were in Dahl's testimony is relevant to whether the exclusion of Dahl's testimony "might reasonably have influenced the jury and changed the result of the trial." *Kedrowski*, 933 N.W.2d at 62 (quotation omitted).

16

Having carefully reviewed the testimony of both Dahl and Jacobson, we discern no prejudicial error in the district court's decision to strike Dahl's testimony.

*Cross-Examination of Building Owner about the Owner's Fire-Insurance Coverage*

Western next argues that the district court erred in permitting Galaxy to cross-examine the building owner about his insurance on the building. At trial, Galaxy, over Western's objection, cross-examined the building owner about his obligations as landlord under the lease with Galaxy. The lease provides: "Landlord shall, at Tenant's expense . . . procure and maintain at all times during the Lease Term . . . fire and extended coverage insurance on the Premises." During cross-examination, the building owner confirmed that he had insurance on the building, a portion of Galaxy's rent went toward the cost of that insurance, his insurance company paid for the losses resulting from the fire, and he did not direct any of those funds to Galaxy. Galaxy then moved on to questioning the building owner about other lease provisions.

Western later renewed its objection to the testimony about insurance, and the district court explained that the testimony was relevant "given the way that [Western] is trying to portray [the building owner] . . . as a witness who not only has no stake in this, but actually liked [Galaxy and the Mansours]." The district court reasoned it was "fair game for [Galaxy] to come at it from another direction to suggest maybe [the building owner] wasn't as disinterested or as kindly toward his tenants as [Western] seem[s] to suggest." In the order denying Western's posttrial motion for a new trial, the district court affirmed its prior ruling that the testimony was relevant to credibility and bias.

Under the rules of evidence, the credibility of a witness can be attacked by evidence of bias or prejudice.[3]  Minn. R. Evid. 616.; *see also Riewe v. Arnesen*, 381 N.W.2d 448, 454 (Minn. App. 1986) (concluding cross-examination disclosing insurance, and relationship with insurer, was relevant to proving bias or prejudice of the witness under rule 411), *rev. denied* (Minn. Mar. 27, 1986).  Here, the building owner was a key witness for Western, providing testimony that suggested he was the one who arranged and paid for many of the improvements claimed by Galaxy.  His testimony directly contradicted many of Galaxy's claims and was central to Western's intent-to-deceive defense.  Evidence of the building owner's insurance was relevant to his potential bias as one of Western's key witnesses.

Western contends that "neither the court nor Galaxy identified what 'facts' the questions about his insurance coverage elicited that 'might tend to show [the building owner] was not as favorably inclined toward the Mansours as he claimed to be.'"  But the jury could fairly draw an inference that the building owner had a motive to claim that he had made and paid for tenant improvements to maximize his insurance recovery, a recovery that was not shared with Galaxy.

Moreover, we are not persuaded that Western has demonstrated prejudicial error.  Western argues that the testimony was designed to be inflammatory and draw a contrast between Western—which denied the insured's claim—and the building owner's insurance company—which paid the claim.  But the questions suggest the intent was focused on

---

[3] We also note that the rules of evidence expressly allow the admission of evidence of liability insurance coverage to show "bias or prejudice of a witness."  Minn. R. Evid. 411.

18

trying to undermine the building owner's credibility, not to draw a contrast with Western. The questions were also part of a broader series of questions about the terms of the lease and the testimony consisted of only five questions; the information was not otherwise highlighted. On this record, the district court did not abuse its discretion in denying Western's motion for a new trial based on the building owner's testimony about his insurance coverage.

### B.      Jury Instruction on Honest Mistake

Western next argues that it is entitled to a new trial because the district court provided an improper jury instruction. The district court has broad discretion in fashioning jury instructions, but "a court errs if it gives a jury instruction that materially misstates the law." *George*, 724 N.W.2d at 10. An erroneous jury instruction "does not necessitate a new trial unless the error was prejudicial." *Id.* "A jury instruction is prejudicial if a more accurate instruction would have changed the outcome in the case." *Id.*

When instructing the jury on Western's intent-to-deceive defense, the district court instructed: "Under insurance provisions voiding the policy for misrepresentation or fraud, only willful or intentional misstatements calculated to deceive the insurer operate to void the policy. *Honest mistakes do not void the policy*." (Emphasis added.) Western contends that the district court erred by instructing the jury that "[h]onest mistakes do not void the policy" because there was no evidence to support the theory that Galaxy made an honest mistake in its representations to Western. *See Henning Nelson Constr. Co.*, 383 N.W.2d at 654.

19

We disagree for several reasons, most significantly because the instruction did not "materially misstate[] the law." *George*, 724 N.W.2d at 10. The district court's instruction was not only an accurate statement of law, but a direct quote from the supreme court's opinion in *Henning Nelson Construction Co.* 383 N.W.2d at 654 ("Honest mistakes do not void the policy."). And the Mansours did admit to some errors and inaccuracies in the documentation supporting the claim. The admissions are all to minor inaccuracies, such as the location of certain property claimed to have been destroyed by the fire, but they are nonetheless admissions that the initial representations were not wholly accurate. David Mansour also testified that the claimed damages were an estimate based on his recollection because their records were destroyed in the fire. Given the Mansours' testimony and the passage of several years between the renovations and fire, it would not be unreasonable for the jury to conclude that any misrepresentations concerning the damages claimed may have been due, at least in part, to an honest mistake rather than intentional deceit. Accordingly, the district court did not err in providing the honest-mistake instruction.

### C.     Irreconcilable Verdict

Finally, Western argues that it is entitled to a new trial because the jury verdict is irreconcilable. As previously noted, the jury could have fairly concluded that Western failed to meet its burden of proving its intent-to-deceive defense, and "[i]f answers on a special verdict 'can be reconciled on *any* theory' consistent with the evidence and the fair inferences drawn from the evidence, 'the verdict will not be disturbed.'" *650 N. Main Ass'n*, 885 N.W.2d at 486 (quoting *Dunn*, 745 N.W.2d at 555). We thus reject this

20

argument as a basis for a new trial for the same reasons stated in our discussion of the verdict with regard to Western's JMOL motion.

**III. The district court correctly determined that Galaxy is not entitled to claim total-loss coverage and recover the applicable policy limit on its claim for tenant-improvement losses.**

By notice of related appeal, Galaxy argues that the district court erred in determining that it is not entitled to total-loss coverage on its claim for tenant-improvement losses. This issue was initially addressed by the district court in its order denying the parties' cross-motions for summary judgment. Galaxy bases its claim for total-loss coverage on both section 65A.08, subdivision 2(a), and the policy language.

**A. Minn. Stat. § 65A.08, subd. 2(a)**

All fire-insurance policies in Minnesota must conform to the specified coverages and provisions of the "Minnesota standard fire insurance policy." Minn. Stat. § 65A.01, subd. 1 (2022). The legislature has further established:

> In the absence of any change increasing the risk, without the consent of the insurer, of which the burden of proof shall be upon it, and in the absence of intentional fraud on the part of the insured, the insurer shall pay the whole amount mentioned in the policy or renewal upon which it receives a premium, in case of total loss, and in case of partial loss, the full amount thereof.

Minn. Stat. § 65A.08, subd. 2(a).

Galaxy argues that section 65A.08 applies because the fire resulted in a total loss of the building, and it is therefore entitled to $500,000—the policy limit—for tenant improvements, without having to prove actual damages in that amount. This presents a

21

question of statutory interpretation, which we review de novo. *Stand Up Multipositional Advantage MRI, P.A. v. Am. Fam. Ins. Co.*, 889 N.W.2d 543, 547 (Minn. 2017).

When interpreting a statute, we first determine whether the statute's language, on its face, is clear or ambiguous. *Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). Language is ambiguous only when it is subject to more than one reasonable interpretation. *Id.* We construe statutes in their entirety and interpret each section in light of its surrounding sections to avoid conflicting interpretations. *Id.*

In denying Galaxy's motion for summary judgment, the district court determined: "Chapter 65A establishes that, absent specific individual policy terms providing for a set recovery for a total loss of other property, the chapter's total loss provisions apply only to losses of buildings." We agree with the district court's interpretation. When section 65A.08 is read in the context of chapter 65A as a whole, it is clear that total-loss coverage unambiguously applies to the amount due for a total loss of a building. *Cf. Save Lake Calhoun v. Strommen*, 943 N.W.2d 171, 181 (Minn. 2020) (interpreting chapter 83A as a whole).

Chapter 65A governs fire and related insurance. The very first section of that chapter details the provisions that are required in standard fire-insurance policies. Minn. Stat. § 65A.01, subd. 3 (2022). As Western notes, the term "total loss" is immediately followed by the phrase "on buildings" in every instance it is used in the mandatory provisions set out in that section.

Section 65A.01 provides: "The amount of said loss or damage, *except in case of total loss on buildings*, [is] to be estimated according to the actual value of the insured

property at the time when such loss or damage happens." Minn. Stat. § 65A.01, subd. 3 (emphasis added). The statute further provides:

> In case of any loss under this policy the insured shall give immediate written notice to this company of any loss, protect the property from further damage, and a statement in writing, signed and sworn to by the insured, shall within 60 days be rendered to the company, setting forth the value of the property insured, *except in case of total loss on buildings the value of said buildings need not be stated*, the interest of the insured therein, all other insurance thereon, in detail, the purposes for which and the persons by whom the building insured, or containing the property insured, was used, and the time at which and manner in which the fire originated, so far as known to the insured.

*Id.* (emphasis added). These provisions make clear that total-loss coverage is an exception to the general rule that the amount of loss is measured by the actual value of insured property, and that the exception applies only when determining the amount of loss for a *building* deemed a total loss.

Galaxy argues that "Minn. Stat. § 65A.01, subd. 3 says that, in the event of a total loss 'the insured need not state the value of the property in a notice of loss.'" But the statute does not say this. Rather, the statute provides that "in case of total loss on buildings the value of said buildings need not be stated." *Id.* The quote Galaxy attributes to the statute appears to be taken from this court's decision in *Auto-Owners Insurance Co. v. Second Chance Investments, LLC*. 812 N.W.2d 194, 197 (Minn. App. 2012), *aff'd*, 827 N.W.2d 766 (Minn. 2013). Galaxy, however, quotes just a partial sentence from that opinion. The full sentence states: "First, in instances of 'total loss on buildings,' the insured need not state the value of the property in a notice of loss." *Id.* (quoting Minn. Stat.

§ 65A.01, subd. 3). When the word "property" in *Auto-Owners* is viewed in context of the full sentence, it is clear that "property" references the loss of a *building*, not the loss of an insured-lessee's tenant improvements inside leased premises. And although the fire here resulted in the total loss of the building, Galaxy does not seek to recover the loss of the building, it seeks to recover the policy limit for its tenant improvements.

This interpretation is consistent with the purpose of the statute's agreed-value exception for total loss of a building. "The basic principle of a 'valued policy' statute is that the parties to a fire insurance contract agree in advance on a valuation of the property to be insured, and, in the absence of fraud, this valuation is binding and not subject to judicial inquiry." *Nathan v. St. Paul Mut. Ins. Co.*, 68 N.W.2d 385, 388 (Minn. 1955). "Thus, the purpose of valued policy statutes is twofold: (1) To prevent overinsurance by requiring prior valuation; and (2) to avoid litigation by prescribing definite standards of recovery in case of total loss." *Id.* This principle is easily applicable when considering an insurance contract that provides coverage for the total loss of a building, because at the time the parties enter into the contract, there is some understanding of the value of the building being insured. By contrast, business personal property, such as tenant improvements, is more likely to change during the policy period.

Our interpretation is also supported by our decision in *White v. New Hampshire Insurance Co.*, which acknowledged that section 65A.08, the section at issue in this case, substantively parallels the "total loss on buildings" language in section 65A.01. 390 N.W.2d 313 (Minn. App. 1986), *rev. denied* (Minn. Aug. 27, 1986). There, this court explained:

> Section 65A.01 also provides that insurers are prohibited from attaching provisions limiting the amount to be paid in the case of *total loss on buildings* by fire to less than the stated amount of insurance. *Id.* § 65A.01, subd. 5. This "valued policy law" *is repeated in section 65A.08*, which provides that "the insurer shall pay the whole amount mentioned in the policy or renewal upon which it receives a premium, in case of total loss, and in case of partial loss, the full amount thereof." *Id.* § 65A.08, subd. 2.

*Id.* at 315 (emphasis added).

The cases cited by Galaxy are distinguishable. In both cases, the insureds proved the scope of their damages; there was no claim that the insureds were entitled to policy limits without such proof. In *Brecher Furniture Co. v. Firemen's Insurance Co.*, the insured established that the actual losses incurred were in excess of the policy limits and that is why the policy limits were awarded in that case. 191 N.W. 912, 912 (Minn. 1923). Similarly, in *Marshall Produce Co. v. St. Paul Fire & Marine Insurance Co.*, because the insured proved their total stock was rendered valueless, they were entitled to the full value of the lost product under the policy. 98 N.W.2d 280, 296 (Minn. 1959). Here, Galaxy failed to persuade the jury that it incurred tenant-improvement losses in excess of the $100,000 the jury awarded.

We thus conclude that, unless otherwise provided for in a fire-insurance policy, total-loss coverage under section 65A.08 applies only to total loss of a building, not loss of an insured-lessee's tenant improvements to leased premises in a building.

### B.    Policy Language

Galaxy argues that, even if not required by statute, it is entitled to recover the policy limits for tenant improvements under the provisions of its insurance contract. We review

the interpretation of insurance policies de novo. *Depositors Ins. Co. v. Dollansky*, 919 N.W.2d 684, 687 (Minn. 2018).

Consistent with the mandatory fire-insurance provisions set out in section 65A.01, all of the references to "total loss" in the insurance policy are in the context of the total loss of an entire building. As to losses for tenant improvements, the policy explicitly provides that such losses are to be valued at "[r]eplacement cost" or "[a] proportion of your original cost." In its reply brief, Galaxy acknowledges this fact but asserts that the quoted provision "is amended by the Minnesota Changes form to state that in the event of a total loss, the Limit of Insurance sets the value." Galaxy thus argues that because the fire resulted in a total loss of the building, under the Minnesota Changes endorsement, the policy limit sets the value for its tenant-improvement losses. We disagree.

The provision referenced by Galaxy states: "We agree that, in the event of a total loss, the Limit of Insurance (or the limit shown in the total loss schedule of values) *for a building which is Covered Property* represents its value." (Emphasis added.) This provision clearly refers only to coverage *for a building*, not a lessee-insured's tenant improvements. Accordingly, neither this provision nor the general reference to "broadened coverage" entitle Galaxy to total-loss coverage for tenant improvements. Rather, the plain language of the insurance policy, which conforms with the Minnesota standard fire-insurance policy, provides that losses for tenant improvements are to be calculated using replacement cost or a proportion of the cost of those improvements borne by the insured. We thus affirm the district court's denial of Galaxy's motion for a new trial on the issue of total-loss coverage based on the terms of the policy.

26

**IV.** **The district court did not err in determining the accrual date for prejudgment interest.**

Finally, Galaxy argues that the district court erred in determining the accrual date for prejudgment interest. Pursuant to Minn. Stat. § 60A.0811, subd. 2(a) (2022):

> An insured who prevails in any claim against an insurer based on the insurer's breach or repudiation of, or failure to fulfill, a duty to provide services or make payments is entitled to recover ten percent per annum interest on monetary amounts due under the insurance policy, *calculated from the date the request for payment of those benefits was made to the insurer*.

(Emphasis added.) The district court determined that prejudgment interest should be calculated from January 10, 2019—the date Galaxy submitted its sworn proof of loss— because that is the first date that Galaxy requested payment of a specific monetary amount. Galaxy argues that the proper date should be May 30, 2018—the date an independent adjuster hired by Western met with representatives from Galaxy.

In support of its argument, Galaxy relies on the fact that the prejudgment-interest statute at issue here, section 60A.0811, subdivision 2(a), does not expressly provide that prejudgment interest is triggered upon a written notice of claim as is required by the general prejudgment-interest statute. *Cf.* Minn. Stat. § 549.09, subd. 1(b) (2022) (stating "preverdict, preaward, or prereport interest on pecuniary damages shall be computed [from] . . . the time of a written notice of claim"). Instead, the statute provides that prejudgment interest is "calculated from the date the request for payment of those benefits was made to the insurer." Minn. Stat. § 60A.0811, subd. 2(a). Galaxy thus maintains that the district court erred in concluding that prejudgment interest only began to accrue after

Galaxy made a demand for a specific monetary amount, when it submitted its proof of loss to Western.

But we need not resolve this question because we conclude that Galaxy failed to establish that it made any "request for payment" to Western during the May 30, 2018 meeting. The independent adjuster testified at trial that, during the meeting, the Mansours did not ask him for any information or documents; they asked if he could assist them in retrieving the cash register and a computer from the building. The independent adjuster was unable to help because no one was allowed in the building at that point. David Mansour similarly testified that he asked the independent adjuster for assistance in retrieving items from the building, but he did not testify to making any other requests of the independent adjuster during the meeting. On this limited record, Galaxy has failed to establish that it made a "request for payment" at the May 30, 2018 meeting. The undisputed evidence thus supports the district court's finding that the first request for payment occurred on January 10, 2019. We therefore discern no error in the district court's determination of the accrual date for prejudgment interest.

## DECISION

In sum, we affirm the district court's denial of Western's motions for judgment as a matter of law or a new trial. We also affirm the district court's determinations that Galaxy is not entitled to total-loss coverage under Minnesota Statutes section 65A.08, subdivision 2(a), or the policy provisions, and that, under the record in this case, the district court did not err in determining that prejudgment interest began to accrue on January 10, 2019.

**Affirmed.**

28