*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-2055**

BGD, LLC,
Appellant,

vs.

Stephen K. Burns,
Respondent,

Pacer Minerals, LLC, a South Dakota Limited Liability Company, et al.,
Defendants.

**Filed June 22, 2026**
**Reversed and remanded**
**Rasmusson, Judge**

Carver County District Court
File No. 10-CV-22-120

Paul W. Chamberlain, John P. Chamberlain, Chamberlain Law Firm, Wayzata, Minnesota (for appellant)

Richard C. Landon, Charles K. Maier, Amy Erickson, Lathrop GPM LLP, Minneapolis, Minnesota (for respondent)

        Considered and decided by Larkin, Presiding Judge; Cochran, Judge; and Rasmusson, Judge.

**NONPRECEDENTIAL OPINION**

**RASMUSSON**, Judge

        In this contract dispute, appellant alleged that respondent breached a repayment agreement. In its posttrial findings of fact, conclusions of law, and order for judgment, the

district court accepted the jury's verdict that respondent breached the repayment agreement and that this breach did not cause appellant damages. Appellant primarily argues that the district court erred by accepting the jury's logically impossible finding of no causation of damages despite finding a breach of the repayment agreement. Because, under the unique facts of this case, the jury's finding of no causation of damages is impossible to reconcile with its finding of breach, we reverse and remand for a new trial on damages.

## FACTS

Appellant BGD LLC is a Minnesota limited liability company created by Robert Griffith. BGD is owned by a trust controlled by Griffith. Respondent Stephen K. Burns is a businessman who owns, among other ventures, an excavating business.

### Pacer Minerals

Griffith and Burns collaborated in multiple business ventures, but their involvement with Pacer Minerals forms the basis for the issues in this appeal. In 2015, Burns identified an investment opportunity in a South Dakota mining operation and formed Pacer Minerals LLC, a South Dakota limited liability company. Griffith and another individual, R.B., agreed to invest in the project and, along with Burns, initially invested the same amount of money in the operation. In the beginning, everyone had an equal one-third membership stake.

Pacer required substantial cash-call contributions from the members. At some point, R.B. stopped investing in Pacer. After contributing $581,500 in cash, Burns informed Griffith that he lacked funds to meet his investment obligations in Pacer. Griffith believed that Burns still sought to maintain his equal ownership stake in Pacer and accordingly

2

began contributing Burns's share through BGD. Griffith and Burns came to an oral agreement that BGD would advance Burns's share of the contributions and that Burns would repay these funds on a two-for-one basis. Subsequent cash calls resulted in BGD contributing several million dollars by the end of 2018.

*Repayment Agreement*

In 2019, the parties addressed their obligations with respect to these contributions in a repayment agreement.[1] The repayment agreement recites that the three members contributed $10,175,878 combined, with Burns contributing $581,500 in cash and BGD contributing $7,989,378 in cash. The repayment agreement additionally recites that BGD and Burns had an "unwritten agreement" that "Burns will repay BGD for the difference in the $581,500 that Burns actually paid to Pacer and Rushmore versus the $3,391,959 that was rightfully Burns' share of the $10,175,878 total cash paid to Pacer and Rushmore."[2] Accordingly, the agreement provides that "Burns hereby acknowledges that he is indebted to BGD in the principal amount of $2,810,459." It added that Burns agrees to repay this amount on a two-for-one basis with accumulated interest.

---

[1] At trial, Burns disputed that he signed this agreement. Burns does not challenge the district court's acceptance of the jury's finding that he signed the agreement.

[2] The repayment agreement describes Rushmore Reserves LLC as a separate South Dakota limited liability company of which BGD and Burns owned equal shares. Because the parties only refer to Pacer in their briefs, and because the repayment agreement refers to the contributions to Rushmore and Pacer in the aggregate, we primarily use the term "Pacer" when referring to the two entities throughout this opinion.

*Litigation*

In February 2022, BGD filed a lawsuit against Burns alleging breach of the repayment agreement. Burns filed an answer, counterclaim, and cross-claim. In this filing, Burns raised affirmative defenses including equitable estoppel.

The matter proceeded to a six-day jury trial in September 2024. The court submitted questions regarding both legal and equitable issues to the jury but considered the jury's findings on the equitable issues as only advisory. Pertinent to the issues on appeal, the jury found that the repayment agreement was an enforceable contract, that Burns signed and breached the contract, but that the breach did not cause damage to BGD. In the district court's findings of fact, conclusions of law, order for judgment, and judgment, it accepted the jury's findings on these legal questions, reasoning that it was possible to reconcile the jury's finding of breach with the finding of no damages.

BGD subsequently moved for amended findings and conclusions, requesting that the district court find and impose damages and enter judgment against Burns in the amount of $12,485,337. In the alternative, BGD requested a new trial on damages. The district court denied the motion.

This appeal follows.

## DECISION

BGD appeals the district court's March 2025 judgment in which it addressed the special-verdict responses and the October 2025 order denying its motion for amended findings and conclusions or a new trial. Specifically, BGD contends that the district court erred by accepting the jury's logically impossible finding of no causation of damages

4

despite finding a breach. BGD faces a high bar in challenging the jury's special-verdict finding that the breach did not cause damages. A reviewing court should not set aside a jury's special verdict "unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Raze v. Mueller*, 587 N.W.2d 645, 648 (Minn. 1999) (quotations omitted). In reviewing a challenge to a special-verdict answer, appellate courts consider "whether the special verdict answers can be reconciled in any reasonable manner consistent with the evidence and its fair inferences. If the answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 555 (Minn. 2008) (quotations and citation omitted); *see also Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 734 (Minn. 1997) ("[A] jury's answer to a special verdict form can be set aside only if no reasonable mind could find as did the jury.").

This case presents a question regarding whether it is possible to reconcile the jury's finding that the contract breach did not cause damage with the contract language specifying that Burns owes a principal amount of $2,810,459. Contract damages serve to "place the plaintiff in the same situation as if the contract had been performed." *Christenson v. Milde*, 402 N.W.2d 610, 613 (Minn. App. 1987). BGD, as the party alleging breach, "has the burden to demonstrate such damages with a reasonable degree of certainty and exactness." *County of Blue Earth v. Wingen*, 684 N.W.2d 919, 924 (Minn. App. 2004) (quotation omitted).

The district court, recognizing the high bar for disturbing the jury's special verdict, found it possible to reconcile the jury's finding of breach with the finding of no causation

5

or damages. The district court first noted that, under Minnesota caselaw and the corresponding jury instructions, damages do not necessarily follow from a contract breach. It then explained that "[t]he jury's conclusions that BGD did not suffer damages—or at least damages that were not remote, conjectural, or speculative—is also well supported by the evidence." In support of this conclusion, the district court recited the following considerations: (1) Griffith's testimony that Burns entered into the repayment agreement to maintain a one-third interest in Pacer but that Griffith's damages calculation sought to keep the contributions equal between BGD and Burns, (2) the damages calculation's purported inconsistency with the repayment agreement through its incorporation of funds collected from Burns to make up the shortfall after R.B. stopped investing, (3) inconsistencies in the amount of debt alleged in the repayment agreement ($2,810,459) compared to the damages model ($3,404,500), (4) records indicating that Burns contributed more than $581,500 to Pacer, (5) records that Burns's ownership interest was greater than one-third at times, (6) requests for contributions coming from someone other than Burns, (7) requests for damages incurred after the repayment agreement, and (8) certain records that do not reflect the existence of the repayment agreement.

Given the deference owed to a jury's special-verdict answers, it is uncommon for an appellate court to overturn a jury's response to a special-verdict question. *See Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 888 (Minn. 2010). This is one such rare situation. We note that the repayment agreement specifies that Burns owes BGD a definitive amount—$2,810,459 "on the basis of $2.00 for every $1.00" plus interest, where applicable. Although Burns made a partial payment of $985,950 in May 2022, a significant

6

portion of his financial obligations remains unmet. When a party breaches an agreement for the payment of money, "the injury is susceptible of a definite measurement." *McGukin v. Harvey*, 225 N.W. 19, 19 (Minn. 1929); *see also LeFavor v. Stuebner*, No. A04-0509, 2004 WL 2283538, at *2 (Minn. App. Oct. 12, 2004) (relying on *McGukin* in explaining that "[i]t is well established that when the breached contract involves only the payment of money, the damages are susceptible of definite measurement").[3]

Arguing for affirmance, Burns contends that it is possible to reconcile the jury's breach finding with its causation and damages finding because BGD "ultimately obtained the benefit of its bargain through self-help and some payment, enjoying for itself full ownership and control of Pacer despite purporting to advance its own funds on Burns' behalf to maintain an ownership interest that he never truly had." In support of this argument, Burns contends that the repayment agreement was predicated upon Burns's desire to keep his one-third ownership share in Pacer and that BGD avoided harm by taking full financial and operational control, as evidenced by the allocation of 94% of tax losses to Pacer and Griffith and his family making major business decisions. We are not persuaded.

Burns's self-help argument relies upon the premise that the repayment agreement allows for satisfaction through self-help or that the parties modified the repayment agreement to allow for satisfaction through self-help. The repayment agreement, however, contemplates repayment of a stated sum of cash and contains no language indicating that

---

[3] We cite this nonprecedential opinion for its persuasive value. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

these self-help methods constitute repayment.[4] To allow Burns to satisfy his repayment obligations by granting BGD financial or operational control, the parties would have been required to come to a subsequent agreement modifying the terms of the repayment agreement. *See Cambern v. Hubbling*, 238 N.W.2d 622, 624 (Minn. 1976) (requiring assent between the parties to modify a contract); *Webb Bus. Promotions, Inc. v. Am. Elecs. & Ent. Corp.*, 617 N.W.2d 67, 72 (Minn. 2000) (contemplating an agreement between parties for a valid accord and satisfaction of a contractual agreement). We discern no such evidence in the present case. Therefore, the parties' dealings following the execution of the contract do not present a basis for determining that BGD avoided damage despite Burns's breach of the agreement.

Burns additionally argues that BGD's presentation of its damages request lacked evidentiary support, leaving the jury without an adequate, reasonable basis for approximating BGD's loss. In making this argument, Burns contends that a damages calculation that BGD submitted at trial was inconsistent with the amounts identified in the repayment agreement and included debt not contemplated in the repayment agreement. Therefore, Burns appears to contend that it was plausible for the jury to award BGD no damages.

---

[4] We note that the repayment agreement includes language stating that Burns's repayment obligation is secured by a pledge of his equity in Pacer and his assignment of funds that would be payable to him from two other businesses. Although a document reflects that BGD allocated 94% of Pacer's losses to BGD, we note that this same document reflects equal ownership between BGD and Burns. We therefore have no basis for determining that BGD acted on this security interest or that any equity that Burns had in this business satisfied his substantial repayment obligations.

As we noted above, BGD bears the burden of demonstrating damages "with a reasonable degree of certainty and exactness." *Wingen*, 684 N.W.2d at 924 (quotation omitted). BGD must also "establish a reasonable basis for approximating [the] loss." *Galaxy Wireless, LLC v. W. Nat'l Mut. Ins. Co.*, 8 N.W.3d 698, 705 (Minn. App. 2024) (quotation omitted). Irrespective of any confusion in the amount of damages to which BGD was entitled, it does not follow that there were no damages. The repayment agreement required a principal payment of $2,810,459, and the record indicates that Burns only made one payment against this obligation—a $985,950 payment in May 2022. From that information, it does not follow that, as the jury found, BGD was entitled to *no damages*. Because we are left without a basis to reconcile the jury's finding that Burns breached the repayment agreement without causing damages, we reverse and remand for a new trial on damages.[5]

**Reversed and remanded.**

---

[5] BGD additionally argued that the district court erred by considering parol evidence in determining that BGD's damages calculation was flawed. Because we are reversing and remanding for a new trial on damages, we do not consider this argument. BGD additionally challenges the district court's denial of its motion for judgment as a matter of law on the equitable-estoppel defense, arguing that the presence of questions pertaining to equitable estoppel confused the jury and led it to award no damages. For the same reason, we decline to address this argument.