STATE, BY WALTER F. MONDALE, ATTORNEY GENERAL, v.
HARRY W. LARSEN AND OTHERS.
POLLIE V. McKELLEP AND ANOTHER, RESPONDENTS.

145 N. W. (2d) 430.

October 7, 1966—No. 40,015.

*Robert W. Mattson,* Attorney General, *Perry Voldness,* Deputy Attorney General, and *Michael L. Kiefer,* Special Assistant Attorney General, for appellant.

*Ryan, Ryan & Ebert* and *Thomas J. Ryan,* for respondents.

SHERAN, JUSTICE.

Appeal from an order of the district court denying a new trial in condemnation proceedings.

On and before March 16, 1964, Pollie V. McKellep and Kenneth L. McKellep, respondents, were the owners of a 71-acre tract of land near Mille Lacs Lake in Crow Wing County in this state. This tract was located along the northwest side of Highway No. 169 and to the north of Garrison Creek, an improved waterway affording access from respondents' land to the lake. The Department of Highways for some years had had an easement over the narrow strip of land north of Garrison Creek along the south boundary of respondents' land, evidently for the purpose of bridge maintenance. On March 16, 1964, the Department of Highways, pursuant to its plan to relocate Highway No. 169, filed its petition for condemnation of certain lands including part of respondents' tract. Although the acquisition involved only 4.33 acres, its effect was to separate a 2.07-acre triangular-shaped tract from the balance of the realty. Access was limited for the first time, the 2.07-acre tract receiving access only to the old highway and the balance of the realty receiving access at only two points on the new highway. The trial court ruled that the condemnation petition also eliminated access from the landowners' property to Garrison Creek.

Trial of the action commenced on September 28, 1964, and on September 30 the jury returned its verdict allowing the landowners $8,000 as damages for the taking. By its motion for a new trial and claims of error on this appeal, the state contends that the jury's award should be

vacated and a new trial ordered because the trial court ruled as a matter of law that the state had extinguished access from the landowners' property to Garrison Creek and refused to allow the state to clarify or amend the proceedings to eliminate any question of the state's taking the access to the creek; because landowners' witnesses, in giving their opinions as to the property's value before and after the taking, gave consideration to factors not applicable in this case under the evidence; and because of improper questions and statements on the part of the landowners' counsel.

■ *Trial court's ruling that state took access to creek and refusal to allow state to clarify or amend proceedings.* One of the landowners and their witnesses in valuing the loss caused by the condemnation included as an element of damage the landowners' loss of access to Garrison Creek through which the landowners could move boats to Mille Lacs Lake. This was only one of many elements of damage considered, and no dollar amount was ever ascribed to it.

While counsel for the state asserted and protected its position that the interest condemned did not include access to the creek, offered to show that such taking was not intended, and agreed to stipulate that access to the creek was not affected by the proceedings, we have determined that a new trial should not be directed upon this ground because of events occurring at the close of the testimony appearing in the record as follows:

"The Court: * * * [T]he court feels that in this case there may be a close issue as to whether or not there is access from that portion of the land to the creek, and because of that it is the court's intention to submit to the jury in the form of verdicts one which would provide for damages if access has been taken, and otherwise damages if access has not been taken, and this is done for the purpose of taking up an appeal so that it will not be necessary to try the case over again."

The response of the attorneys for the parties to this declaration by the court was this:

"Mr. Kiefer: * * * *The record may show that the State will object to the submission to the jury of alternative verdicts regarding the finding of the jury as to damages in their verdict as to damages in one form with the access to the creek not considered as being taken, and in the second*

*form with access to the creek considered as taken from the landowner, it being the State's position that there has been no taking of access from the landowner to this creek, that offer of proof has been made regarding this, and partial dismissal of access as to this portion of this taking has been offered by the State.*

"The Court: Does counsel for the defendant also oppose the submitting of alternative verdicts?

"Mr. Ryan: I do, Your Honor." (Italics supplied.)

The court thereupon made the following ruling:

"In view of that fact that both parties through their attorneys oppose the submission of alternative verdicts the court will not submit them, and the court will submit only one verdict. In doing so the court will instruct the jury that the court is of the opinion the court has determined that access over the land, access from the landowner's property to the creek has been taken by the State of Minnesota."

No exception was taken by the state at the close of instructions in which the trial court declared that access to the creek had been taken by virtue of the condemnation notwithstanding the usual inquiry by the court as to whether counsel had noted any inadvertencies or desired to make any comments or exceptions.

We are satisfied that were it not for the resistance of the attorneys for the parties, the trial judge would have devised a method of submitting a special interrogatory, the answer to which would have made it possible to reduce the verdict by such amount of damage as the jury found attributable to the taking of access to the creek. This being the case, the state is now in a position analogous to that of a party passively conceding to the withholding of a fact issue from the jury and then, when disappointed in the verdict, asserting it was error not to submit the issue. See, Thelen v. Spilman, 251 Minn. 89, 86 N. W. (2d) 700, 77 A. L. R. (2d) 1315. It is true that the present case is unique because here the position of the condemnor with respect to creek access had been called clearly to the attention of the trial judge. But, assuming that the rejection of the state's position with respect to the nature of the interest was erroneous, we have in mind that one of the functions of special verdicts is to eliminate the

146

necessity of a new trial if and when such errors occur. See, Wilson v. Homestead Valve Mfg. Co. (3 Cir.) 217 F. (2d) 792; Morris v. Pennsylvania R. Co. (2 Cir.) 187 F. (2d) 837; Komarinski v. Bullard (W. D. Pa.) 169 F. Supp. 539; Sunderland, *Verdicts: General and Special,* 29 Yale L. J. 253, 259; Note, 37 Iowa L. Rev. 95, 102. Cf. Note, 74 Yale L. J. 483, 494. Although tactical considerations may have motivated the attorney for the state in refusing to accede to the trial judge's suggested submission of what would have been in effect special interrogatories, we find nothing in the record to suggest that the procedure proposed by the trial judge, but rejected by the attorneys for the parties, would have caused prejudice in a legal sense. In arriving at this conclusion, we have found the following authorities enlightening although not directly in point: Hallada v. G. N. Ry. Co. 244 Minn. 81, 69 N. W. (2d) 673; Halos v. Nachbar, 196 Minn. 387, 265 N. W. 26; 2B Barron & Holtzoff, Federal Practice and Procedure (Rules ed.) § 1054, p. 338; Wright, Minnesota Rules, Supp. p. 60; Note, 37 Iowa L. Rev. 95.

In this case where it is not clear that the outcome of a new trial would be substantially different from that of the one being reviewed, we would not feel justified in granting the state a new trial after it has successfully opposed a reasonable and suitable proposal by the trial court which would have obviated the need for a new trial.

■ *Whether prejudicial error was committed in allowing introduction of improper evidence.* The state next contends that the trial court erred in allowing the landowners' witnesses, in giving their opinions as to the property's value before and after the taking, to give consideration to factors not applicable to the case under the evidence.

The state asserts that the trial court allowed one of the landowners and their witnesses to testify as to the value of individual lots which could be cut out of the landowners' premises. This court has held that the measure of compensation to be awarded for a partial taking of undeveloped rural real estate is the depreciation in value of the entire tract by reason of the condemnation and not the aggregate amount of the damages resulting to individual lots comprising the tract. State, by Lord, v. Malecker, 265 Minn. 1, 120 N. W. (2d) 36. In the instant case the landowner and the witnesses did give their opinions on the basis of the tract's value as a

whole, before and after the taking. Thereafter, the landowner, by way of explanation, specified values of lots in the various portions of the tract, but for all that appears he may have intended to relate the values of the various portions of the tract as they would have been in a sale of the entire tract to one buyer. Another witness, upon cross-examination by the state, acceded to the state's counsel's suggestion that he arrived at his figures on the basis of several different lots being sold to several different buyers. Although the trial court might have been more restrictive than it was, we cannot say that these matters constituted prejudicial error, particularly in light of the fact the jury was instructed that—

"* * * [t]he measure of damages as I have already told you here is the difference between the market value of the entire tract before and after the taking. Market value here does not mean what individual tracts would sell for to numerous individual buyers. What we are concerned with here is the price which an individual purchaser would pay for the entire tract in a single transaction."

The state also contends that the court erred in allowing one of the landowners' valuation witnesses to base his testimony as to damages on the assumption that the triangle of land severed by the relocation of the highway "may have no access to anything," referring to the possibility that the old highway may not be maintained as a road by the county authorities to whom it would revert. The state asserts the court should have excluded the testimony and instructed the jury in the terms of Minn. St. 161.16, which would have apprised the jury that before the old highway could be vacated the county would have to compensate the abutting landowners. As to this ground, the trial court must be sustained. The record shows that the jury was made aware of the county's duty to maintain the old highway and to compensate the abutting landowners as a condition to vacating it. The witness' remark might be construed as merely referring to the fact that the property's access was not as good as it had been and this point may have been relevant to the case. See, State, by Mondale, v. Gannons Inc. 275 Minn. 14, 145 N. W. (2d) 321; State, by Lord, v. Kohler, 268 Minn. 77, 128 N. W. (2d) 90; Hendrickson v. State, 267 Minn. 436, 127 N. W. (2d) 165. No prejudicial error is found,

particularly in view of the fact that counsel for the state, when asked if he had any exceptions or comments to make in regard to the instructions, answered in the negative.

■ *Whether certain of the landowners' counsel's questions and statements created prejudicial error.* The state alleges prejudice from improper conduct on the part of the landowners' counsel in inquiring as to prices allegedly paid for properties other than the subject tract after the state's objections to such inquiry had been sustained and in stating in final argument that he thought the state was being unfair and that special care should be used to insure that condemnees are adequately compensated because of their lack of choice regarding whether to sell or not. The conduct of the landowners' counsel in the instances referred to, viewed in the context of his entire closing argument and of the trial as a whole, was not such as to make a new trial necessary.

Affirmed.