Susan DUNN, et al., Appellants,

v.

NATIONAL BEVERAGE CORP., a Delaware corporation, et al., Respondents,

DTM Distributing, Inc., Defendant.

Nos. A06–396, A06–397.

Supreme Court of Minnesota.

March 6, 2008.

Phillip R. Krass, Benjamin J. Court, Krass Monroe, P.A., Bloomington, for appellants.

John Edward Connelly, Elizabeth Shields Keating, Faegre & Benson, L.L.P., Minneapolis, for respondents.

---

1. Dunn and Newstrom own Twin City Home Juice Company. Although the company's name subsequently was changed to Home Juice Citrus Products Mid–West, Inc., we refer to this entity by its historical name of Twin City Home Juice Company.

## OPINION

PAGE, Justice.

Appellants Susan Dunn, Richard Newstrom, and Twin City Home Juice Company [1] (collectively, Twin City) sued National Beverage Corp. (National Beverage) and DTM Distributing, Inc. (DTM), alleging, among other things, a violation of the Minnesota Franchise Act, Minn.Stat. ch. 80C (2006), and breach of contract. The jury found that National Beverage breached the franchise agreement between the parties and awarded $288,000 in damages for the breach. The jury also found that National Beverage violated the franchise act but awarded no damages for the violation. Twin City filed a post-trial motion for attorney fees under Minn.Stat. § 80C.17, subd. 3. The district court denied the motion, concluding that section 80C.17, subdivision 3, bars an award of attorney fees to a plaintiff who receives no relief under the franchise act. The court of appeals affirmed. We granted Twin City's petition for review, and, for the reasons discussed below, we affirm the court of appeals.

In 1972, Twin City entered into a written agreement with Chicago Home Juice that granted Twin City the right to distribute certain Chicago Home Juice products "within Twin City's marketing area." Chicago Home Juice also agreed not to sell its products to any customer within Twin City's defined marketing area without Twin City's prior written permission. Included among those products was the "Mr. Pure" brand. In 1995, Chicago Home Juice extended its agreement with Twin City for another ten years.[2]

National Beverage acquired Chicago Home Juice in 1999. The asset purchase

2. Testimony at trial indicated that Twin City contributed to an "accrual fund" that was used for marketing purposes. The jury found that the relationship between Twin City and Chicago Home Juice constituted a franchise under Minn.Stat. § 80C.01, subd. 4(a) (defining a "franchise" to require, in part, that the franchisee pay "directly or indirectly, a fran-

agreement stated that National Beverage was purchasing "[a]ll business, properties and assets of every kind and description, whether real, personal or mixed, tangible or intangible, wherever located, used or necessary in the operation of the Business." After National Beverage acquired Chicago Home Juice, National Beverage and Twin City continued to do business in the same manner as Twin City had with Chicago Home Juice.

In March 2002, Twin City sold its assets, including its rights under the agreement with National Beverage, to Service Distributing, Inc. The purchase price was a minimum of $288,000 (to be paid in 48 monthly installments of $6,000 each), plus a share of Service Distributing's future profits, to a maximum of $350,000 in the aggregate. Service Distributing chose DTM as its sub-distributor for National Beverage's products. In the summer of 2002, Service Distributing stopped ordering products from National Beverage, either because of National Beverage's actions (according to Twin City) or because Service Distributing decided to leave the business (according to National Beverage). By letter dated August 19, 2002, National Beverage warned Twin City that it would "take all steps necessary to protect [its] Mr. Pure brand in the Minnesota market." On August 30, 2002, Service Distributing and Twin City formally terminated the purchase of Twin City's assets by Service Distributing.

Twin City then entered into a stock purchase agreement with another company, Tri–County Beverage & Supply, Inc. (Tri–County). But National Beverage had begun an at-will, nonexclusive distributor relationship with DTM, the company formerly acting as a sub-distributor for Service Distributing, and had been shipping products to DTM since late August. Dunn testified that National Beverage refused to sell its products to Twin City, forcing Twin City to tell its customers to buy the products from DTM instead. The purchase by Tri–County never closed, according to Twin City, because National Beverage denied the existence of an agreement with Twin City and because National Beverage told Tri–County and other resellers that DTM, not Twin City, was its distributor in the area.

Twin City, along with its owners, Susan Dunn and Richard Newstrom, sued both National Beverage and DTM for damages resulting from the end of Twin City's relationship with National Beverage. The parties tried several causes of action to a jury in September 2005, including: (1) violation of the Minnesota Franchise Act;[3] (2) breach of contract by both National Beverage and DTM; (3) violation of the Minnesota Deceptive Trade Practices Act; (4) violation of the Minnesota Trade Secrets Act; (5) defamation; (6) tortious interference with contractual relations and prospective business advantage by DTM and National Beverage; and (7) common law business disparagement. At trial, Twin City sought as damages the $375,000 it would have received from the stock sale to Tri–County, plus prejudgment interest, plus a variety of expenses and costs Twin City claimed it incurred and benefits it claimed it did not receive because the stock sale to Tri–County was never finalized, for a total damages claim in excess of $1 million.

chise fee"). That determination is not before us.

**3.** Minnesota Statutes § 80C.17, subd. 1, provides that franchisees may bring civil actions for "damages caused [by the franchisor's violation of the act], for rescission, or other relief as the court may deem appropriate."

Twin City's counsel prepared the first draft of the special verdict form, which contained 49 questions including subparts. Relevant to this appeal, questions 1 through 4 concerned the breach of contract, and questions 5 through 10 related to the violation of the franchise act. In his closing argument, Twin City's counsel spoke to the jury first about the breach of contract questions and then the statutory violation questions. In doing so, he told the jury:

> If I could make this comment now, so I don't forget, all of these individual claims are important. They all have legal significance. So even though you might conclude that the damages are the same for the first cause of action and the second cause of action, don't skip one or not do it full justice. We need answers to all of them even if the damage answer remains the same.

The trial court instructed the jury to determine the amount of money that would compensate Twin City for the breach of contract but did not separately instruct the jury to determine the amount of money that would compensate Twin City for the statutory violation. Furthermore, the court instructed the jury that "[n]othing the attorneys say during the trial, including opening statement and closing argument, is evidence. * * * What the attorneys say about the law may be different from what I say. If this happens, you must rely on what I say about the law."

In answering the special verdict questions, the jury found that National Beverage both breached its contract with Twin City and violated the franchise act. For the breach of contract, the jury awarded $288,000 in compensatory damages. For the franchise act violation, the jury specifically found that National Beverage terminated Twin City's franchise rights without good cause.[4] However, the jury wrote a zero in the blank for the damages that would compensate Twin City for National Beverage's franchise act violation.[5]

National Beverage moved for judgment notwithstanding the verdict on the breach of contract, violation of the franchise act, and defamation claims. Twin City moved for prejudgment interest under Minn.Stat. §§ 549.02–.09 (2006) and for attorney fees under the franchise act, which provides that "[a]ny suit authorized under this section may be brought to recover the actual damages sustained by the plaintiff together with costs and disbursements plus reasonable attorney's fees." Minn.Stat. § 80C.17, subd. 3. Additionally, Twin City moved for judgment notwithstanding the verdict[6] to award damages of $288,000 for the statutory violation, "should such be necessary to authorize the Court to enter its Order granting Plaintiff's reasonable attorneys' fees." In its memorandum to the court, Twin City asserted that the same facts supporting the jury's breach of contract award also supported an award of damages for the franchise act violation.

---

4. Under Minn.Stat. § 80C.14, subd. 3(b), except for circumstances not applicable here, a franchisor cannot terminate or cancel a franchise except for good cause. Further, except for circumstances not applicable here, a franchisor may not terminate or cancel a franchise without giving the franchisee notice of and an opportunity to cure any defaults under the franchise agreement. *Id.*, subd. 3(a).

5. The jury separately awarded Twin City $64,369.45 for a defamation claim against National Beverage, which award is not at issue here.

6. We note that the Minnesota Rules of Civil Procedure now use the term "judgment as a matter of law"; however, we will use the older term "judgment notwithstanding the verdict" because that was the term in effect at the time of the trial at issue. Minn. R. Civ. P. 50.01.

At the motion hearing, however, Twin City withdrew its motion for judgment notwithstanding the verdict. The district court denied Twin City's motions for prejudgment interest and attorney fees, as well as National Beverage's motion for judgment notwithstanding the verdict.

National Beverage appealed the district court's judgment, and Twin City cross-appealed on the denial of attorney fees. *Dunn v. Nat'l Bev. Corp.*, 729 N.W.2d 637, 641 (Minn.App.2007). The court of appeals affirmed the district court's rulings. *Id.* at 655. Twin City petitioned this court to further review the denial of attorney fees, and we granted review.

■ The general rule in Minnesota is that "attorney fees are not recoverable in litigation unless there is a specific contract permitting or a statute authorizing such recovery." *Barr/Nelson, Inc. v. Tonto's Inc.*, 336 N.W.2d 46, 53 (Minn.1983). Because there is no specific language in the parties' contract permitting the recovery of attorney fees, Twin City can recover attorney fees only if permitted by statute. In this case, the applicable statute is Minn. Stat. § 80C.17, subd. 3, which provides: "Any suit authorized under this section may be brought to recover the actual damages sustained by the plaintiff together with costs and disbursements plus reasonable attorney's fees."

We first address Twin City's argument that an award of attorney fees under section 80C.17, subdivision 3, does not require an award of damages under the franchise act. In *Martin Investors, Inc. v. Vander Bie*, we rejected the argument that this provision limited awards of attorney fees to suits for monetary damages. 269 N.W.2d 868, 876 (Minn.1978). Noting that

the statute "specifically permits a claim for costs and disbursements plus reasonable attorneys fees in '[a]ny suit authorized under this section,'" and noting that the statute permitted suits for rescission and restitution,[7] we affirmed the district court's award of attorney fees to plaintiffs who sought and were awarded rescission of the franchise agreement and restitution of their payments to the franchisor. *Id.* (quoting Minn.Stat. § 80C.17, subd. 3).

■ Twin City asks us to go one step further and hold that a plaintiff may be awarded attorney fees under section 80C.17, subdivision 3, for a violation of the franchise act even if the plaintiff receives no relief under the act at all. We decline to stretch the statutory language that far. We hold that an award of attorney fees under section 80C.17, subdivision 3, requires that the plaintiff seek and recover some relief under the franchise act.

We therefore turn to the question of whether the jury's verdict can be construed as awarding any relief to Twin City for a violation of the franchise act. Twin City argues that the jury's $288,000 award on the breach of contract claim also constitutes an award of damages for the franchise act violation. Thus, in short, we must determine whether the jury's answers on the special verdict form can be harmonized in a way that suggests the jury granted Twin City relief under the act.

Twin City argues that the jury's damage awards can and should be harmonized because the jury found National Beverage breached the franchise agreement and because the damages for the breach of the franchise agreement were identical to the

---

**7.** Minnesota Statutes § 80C.17, subd. 1, provides: "A person who violates any provision of this chapter or any rule or order thereunder shall be liable to the franchisee or sub-franchisor who may sue for damages caused thereby, for rescission, or other relief as the court may deem appropriate."

damages requested for the violation of the act. According to Twin City, "[a] fair reading of the special verdict form confirms that the jury decided to not award damages for [the statutory violation] because such damages would be duplicative to those awarded [for the breach of agreement]." National Beverage contends that the jury "refused to award *any* relief" to Twin City for the statutory violation.

■ Generally, we will not disturb a damage award unless the "failure to do so would be shocking or would result in plain injustice." *Hughes v. Sinclair Mktg., Inc.,* 389 N.W.2d 194, 199 (Minn.1986). We have said that appellate courts may not "sit as factfinders," *Raleigh v. Indep. Sch. Dist. No. 625,* 275 N.W.2d 572, 576 (Minn. 1978), and are "not empowered to make or modify findings of fact." *Lumpkin v. N. Cent. Airlines, Inc.,* 296 Minn. 456, 462, 209 N.W.2d 397, 401 (1973).

■ However, "a special verdict form is to be liberally construed to give effect to the intention of the jury and on appellate review it is the court's responsibility to harmonize all findings if at all possible." *Kelly v. City of Minneapolis,* 598 N.W.2d 657, 662 (Minn.1999). The test is whether the special verdict answers "can be reconciled in any reasonable manner consistent with the evidence and its fair inferences." *Reese v. Henke,* 277 Minn. 151, 155, 152 N.W.2d 63, 66 (1967). "If the answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed." *Hauenstein v. Loctite Corp.,* 347 N.W.2d 272, 275 (Minn.1984). In *State v. Larsen,* we noted that "one of the functions of special verdicts is to eliminate the necessity of a new trial" when certain errors occur. 275 Minn. 142, 145–46, 145 N.W.2d 430, 433 (1966). Accordingly, in cases in which special jury verdict answers were inconsistent and irreconcilable, we have changed an answer to conform to the

law and the evidence. *E.g., Orwick v. Belshan,* 304 Minn. 338, 350, 231 N.W.2d 90, 98 (1975); *Reese,* 277 Minn. at 156, 152 N.W.2d at 67.

■ After reviewing the record, we conclude that the jury's special verdict answers can be reconciled because the jury could have found that the breach of contract and the statutory violation, that is, the improper termination of the franchise, were separate events. For example, the jury could have found that National Beverage breached the contract when it began selling products to DTM in August 2002, in violation of the exclusivity provision in the franchise agreement. At the same time, the jury could have found that the franchise was not actually terminated, in violation of the franchise act, until National Beverage refused to sell any more product to Twin City sometime in September of 2002.

Having made those two findings, the jury could then reasonably have found that Twin City's damages were attributable to the breach of contract and not the franchise act violation. The jury's award of $288,000 for breach of contract equaled the guaranteed minimum price that Service Distributing had agreed to pay for Twin City's assets, which purchase agreement Service Distributing rescinded. That is, the jury reasonably could have found that the damages attributable to National Beverage's breach of the franchise agreement were the $288,000 that Twin City was guaranteed to receive under the sale to Service Distributing. In contrast, National Beverage's accounting expert testified that the damages attributable to National Beverage's refusal to do business with Twin City were zero because Twin City, which lost money throughout 2002, was no longer a financially viable business. There was no evidence contradicting that expert opinion. In addition, the expert opined

that the agreement between Twin City and Tri–County was not bona fide.[8]

Nor does it appear that the jury's differing damage awards were either inadvertent or a mistake. As noted previously, in his closing argument, counsel for Twin City expressly told the jurors that each of the individual claims had legal significance and that, "even though [they] might conclude that the damages are the same for the first cause of action and the second cause of action, don't skip one or not do it full justice." On this record, we must conclude that the jury took counsel at his word.

Accordingly, we will not disturb the jury's findings as to the amount of damages awarded for National Beverage's breach of contract and its franchise act violation. Because we conclude that the jury's special verdict form answers can be reconciled, we agree with the court of appeals that Twin City did not receive relief under the Minnesota Franchise Act and is, therefore, not entitled to recover attorney fees under the Act.

Affirmed.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this matter.

8. Although Twin City sought as damages the amount it would have received in the stock sale to Tri–County, the jury found there was in fact no contract between Twin City and Tri–County, a finding Twin City does not contest.