*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1281**

Lana Waldron, as successor Trustee of the Pick Family Trust dated December 11, 2013,
Appellant,

vs.

Marilyn A Stenzel, Individually and former Trustee of the Pick Family Trust dated
December 11, 2013,
Respondent.

**Filed May 19, 2025**
**Affirmed**
**Schmidt, Judge**

Waseca County District Court
File No. 81-CV-22-243

Sarah R. Jewell, River Valley Law, P.A., Waite Park, Minnesota (for appellant)

Christopher L. Paul, Trautmann Martin Law, PLLC, Mankato, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Cochran, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Appellant Lana Waldron, as successor trustee of the Pick Family Trust, argues for the reversal of the denial of her posttrial motion due to the jury's failure to award damages and the district court's order lacking written findings of fact or conclusions of law. Because the district court did not abuse its discretion in denying the posttrial motion, we affirm.

## FACTS[1]

Respondent Marilyn Stenzel and Marie Pick[2] had been friends for over fifty years. Marie frequently asked Stenzel for help as Marie aged.

In 2013, Marie came into an inheritance and created the Pick Family Trust. Stenzel served as the grantor and the initial trustee, with Marie's four adult children as the beneficiaries. Marie's adult children were unaware of the existence of the trust until 2018.

Marie had a Wells Fargo account that was unconnected to the trust, besides the trust having a contingent remainder interest in the account after Marie's death. Between 2013 and 2018, the Wells Fargo account reached a zero-dollar balance. Stenzel received two $5,000 cashier's checks from the Wells Fargo account. Marie spent other money from the account on improvements to the farm ($80,000), gifts to her children ($10,000 each), gifts to her nieces and nephews ($60,000), and charitable donations.

Marie met with two different financial advisors between 2013 and 2017, meeting with one six or seven times and separately meeting with the other four or five times. Stenzel was present at every meeting. The first financial advisor did not feel Marie "was being coerced or forced to do something that she did not" want to do. The second financial advisor never felt the need to ask Stenzel to leave the room when they met.

After learning of the trust, Marie's children filed a lawsuit to have Stenzel removed as trustee. Stenzel resigned as trustee and Waldron accepted appointment as the successor

---

[1] We base the facts on the evidence presented at trial as viewed in the light most favorable to the jury's verdict. *Ouellette by Ouellette v. Subak*, 391 N.W.2d 810, 817 (Minn. 1986).

[2] Given the trust's name, we refer to Marie Pick as "Marie" throughout the opinion.

trustee. In that case, the district court ordered Stenzel to: provide an inventory of all property belonging to the trust, create an accounting of the trust's assets, and transfer all trust records and property in Stenzel's possession to Waldron.

Marie passed away in 2020. In 2022, Waldron—in her capacity as trustee—sued Stenzel. The complaint alleged four counts, including breach of a fiduciary duty.

A jury trial was held over five days. A unanimous jury returned the special-verdict form, rejecting all of Waldron's claims. For the questions addressing the claim for breach of a fiduciary duty, the jury answered the special verdict questions as follows:

**COUNT ONE - BREACH OF FIDUCIARY DUTY.**

**Question 1**   Did Defendant owe Plaintiff a Fiduciary Duty as Trustee?

  **Answer:**         (Yes)            No

*If you answered "Yes" to Question 1 then answer Question No. 2. If you answered "No" to Question No. 1 then skip Questions No. 2-5 and go directly to Question No. 6.*

**Question 2**   Did Defendant Breach her Fiduciary Duty as Trustee?

  **Answer:**         (Yes)            No

*If you answered "Yes" to Question 2 then answer Question No. 3. If you answered "No" to Question No. 2 then skip Questions No. 3-5 and go directly to Question No. 6.*

**Question 3**   Did Plaintiff suffer damages?

  **Answer:**         Yes            (No)

*If you answered "Yes" to Question 3 then answer Question No. 4. If you answered "No" to Question No. 3 then skip Questions No. 4 & 5 and go directly to Question No. 6.*

**Question 4**   Did Defendant's breach of her fiduciary duty cause Plaintiff's damages?

  **Answer:**         Yes            No

*If you answered "Yes" to Question 4 then answer Question No. 5. If you answered "No" to Question No. 4 then skip Question No. 5 and go directly to Question No. 6.*

**Question 5**   What amount of money will fairly and adequately compensate Plaintiff for the damages caused by Defendant's breach of her fiduciary duty?

  **Amount: $**_____

3

Waldron moved for a new trial and judgment as a matter of law. Waldron requested a new trial on damages, asserting that the jury's finding that Waldron suffered no damages was contrary to the "mountains of available evidence" in the case. The district court denied Waldron's posttrial motions on the record during the hearing. In addressing Waldron's motion for a new trial alleging insufficient damages proven, the district court explained:

> As to [the] motion for new trial alleging insufficient damages proven, again, this is based on mere speculation. The jury listened to days of evidence and piles of documents [were] submitted in this matter, and ultimately all ten jurors unanimously decided plaintiff didn't prove damages. There's insufficient evidence for a damage award, and frankly, I can see why the jury came to that conclusion. Plaintiff's evidence was based on mere speculation. They didn't provide any hard evidence that Ms. Stenzel misappropriated this $10,000 of cashier[']s checks or this Northwestern Mutual fund account. Certainly plaintiff, I recall made a big deal about Northwestern Mutual not responding to subpoenas and requests for discovery. Why didn't you ask for a court order? You could have done more to prove there is evidence of this Northwestern Mutual account. You argued speculation, that we believe there is this account out there and Ms. Stenzel and Northwestern Mutual are basically in cahoots and withholding evidence. I don't believe that's true. I believe you failed to prove sufficient evidence for damages and the jury rightfully found no damages for the breach of fiduciary duty as well as the fraud counts.
>
> That leads into 59.01(g), verdict not justified by the evidence. Again, plaintiff, by your own admission, stated that you didn't know what evidence Northwestern Mutual really had. Well, again, you presented a case based on speculation. No hard evidence for this jury to award damages.
>
> So new trial motion is denied on all the grounds. . . . The judgment is going to stand because I believe the jury did weigh all of the evidence, including witness testimony and exhibits. And the question the Court must look at is whether the verdict is so contrary to the preponderance of the evidence as to imply the jury failed to consider all the evidence or acted under some mistake or from some improper

4

motive, bias, feeling, caprice, instead of honestly and dispassionately exercising its judgment. Plaintiff has failed to show anything in the court file that the verdict was contrary to the evidence submitted in this case, therefore, the motion to issue a judgment as a matter of law for plaintiff is denied.

The district court then filed a written order that summarily denied the posttrial motions without including any findings of fact or conclusions of law. Waldron appeals.

## DECISION

Waldron argues that the district court abused its discretion by (1) denying her posttrial motion because the jury should have awarded damages after finding Stenzel breached her fiduciary duty; and (2) not issuing written findings of fact or conclusions of law in the order denying the motion. We address each issue in turn.

## I. The district court did not abuse its discretion by denying Waldron's motion for a new trial based on the jury's answers on the special-verdict form.

Waldron challenges the denial of her new-trial motion with respect to damages on her breach-of-fiduciary-duty claim.[3] We review a district court's denial of a motion for a new trial for an abuse of discretion. *Christie v. Est. of Christie*, 911 N.W.2d 833, 838 (Minn. 2018). We "liberally construe[]" a jury's answers on a special-verdict form "to give effect to the intention of the jury" and we must "harmonize all findings if at all possible." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 555 (Minn. 2008). "If the answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed." *Id.* (emphasis in original) (quotation omitted).

---

[3] Waldron does not contest the jury's verdicts for any of her other three claims.

Waldron argues that the jury was required to award some damages after finding that Stenzel breached her fiduciary duty. Waldron asserts that finding that there had been "a breach of fiduciary duty but also no damages" is "legally inconsistent[.]"

But the special-verdict form simply listed each element for Waldron's claim: duty, breach, causation, and damages. *See Lund v. Lund*, 924 N.W.2d 274, 284 (Minn. App. 2019) (noting elements for breach-of-fidcuary-duty claim), *rev. denied* (Minn. Mar. 27, 2019). The special-verdict form asked the jury to make a finding as to each element.

Contrary to Waldron's argument, the jury did not find that she had proved her entire claim. Instead, the jury found that Waldron had proved the first two elements of her claim; namely, that Stenzel owed the Pick Family Trust a fiduciary duty, and that Stenzel breached that duty. In analyzing the next element of the claim, the jury found that the trust did not suffer any damages. Given that finding, the jury did not answer the question related to the final element (causation). The jury's answers did not create a legally inconsistent verdict.

In addition, our thorough review of the record demonstrates that the jury's answer to the special verdict damages question can be reconciled on multiple theories. For example, Waldron argues that the cashier's checks Stenzel received "definitively establishes a bare minimum of at least $10,000.00 in damages under the court-instructed 'profit the trustee made because of the breach' method of calculating damages." But, as the district court determined, Waldron "didn't provide any hard evidence that Stenzel misappropriated this $10,000 of cashier[']s checks." Rather, the checks came from Marie's personal Wells Fargo account, in which the trust had only a contingent remainder interest (payable to the Pick Family Trust on Marie's death). The jury could have reasonably found

6

that Marie gave her longtime friend a gift of $10,000, which was also the amount that Marie gifted to each of her adult children from the Wells Fargo account. The record supports that the jury's finding that Marie's gift to her friend caused no damage to the Pick Family Trust.

Waldron also posits that the trust suffered damages given that "Trust assets went unaccounted for, were transferred to various charitable causes and organizations that Marie Pick was not otherwise known to support so generously, and were spent to benefit people and entities other than Marie Pick and the beneficiaries of the Trust." But these assertions are based upon Waldron's theory that the jury found Stenzel breached her fiduciary duty by exerting undue influence over Marie. This theory is not supported by concrete evidence. The jury's finding of breach can be reconciled based upon evidence of Stenzel failing to provide the initial accounting of the trust's assets, which was later rectified. Such a breach would not lead to damages to the trust. And, just as Waldron theorizes that Stenzel may have exerted undue influence over Marie to inexplicably support charitable causes, the evidence equally supports a theory that Marie spent her own money the way she chose.[4]

Because the answers on the special verdict form can be reconciled based upon the evidence presented at trial, we will not disturb the jury's verdict. *Dunn*, 745 N.W.2d at 555. Thus, the district court did not abuse its discretion in denying the posttrial motion.

---

[4] Waldron also points to damages in legal costs stemming from her need to investigate the breach of fiduciary duty. But attorney fees are not a measure of damages for a claim alleging breach of a fiduciary duty. *See In re Trusteeship of Tr. of Williams*, 631 N.W.2d 398, 409-10 (Minn. App. 2001) ("[I]t is a fundamental principle of law deeply ingrained in our common law jurisprudence that each party bears his own attorney fees in the absence of a statutory or contractual exception" and "there is no Minnesota case requiring a trustee whose management of a trust has been challenged to pay attorney fees incurred by the successful challenger.") (quotation omitted), *rev. denied* (Minn. Sept. 25, 2001).

7

**II.** **The district court did not abuse its discretion by denying Waldron's posttrial motions without issuing written findings of fact or conclusions of law.**

Waldron argues that the district court abused its discretion by failing to issue written findings of fact or conclusions of law to explain its reasoning for denying her posttrial motions. We review the district court's denial of a posttrial motion for an abuse of discretion. *Christie*, 911 N.W.2d at 838. "A district court abuses its discretion if its decision is against the facts in the record or if its ruling is based on an erroneous view of the law." *State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cnty. Bd. of Comm'rs*, 799 N.W.2d 619, 625 (Minn. App. 2011) (quotations omitted).

We discern neither an error of law, nor an abuse of discretion in the manner in which the district court denied Waldron's posttrial motions. The Minnesota Rules of Civil Procedure do not require a district court to issue written findings of fact or conclusions of law on posttrial motions in a case that was tried to a jury. *See* Minn. R. Civ. P. 52.01; *see also Poppler v. Wright Hennepin Coop. Elec. Ass'n*, 845 N.W.2d 168, 172-73 (Minn. 2014) (concluding that rule 52.01 is inapplicable to a case tried by jury); *Myers v. Hearth Techs., Inc.*, 621 N.W.2d 787, 793 (Minn. App. 2001), *rev. denied* (Minn. Mar. 13, 2001).

Similarly, the statute only requires written findings when an issue of fact has been tried by a court. Minn. Stat. § 546.27, subd. 1(a) (2024) ("When an issue of fact has been tried by the court, the decision shall be in writing, the facts found and the conclusion of law shall be separately stated, and judgment shall be entered accordingly."). The statute did not require the district court to issue written findings of fact or conclusions of law because the issues of fact were decided by a jury.

8

Because the district court was not required to issue written findings of fact or conclusions of law in denying Waldron's posttrial motions, the district court did not abuse its discretion in the manner in which it denied Waldron's posttrial motions.[5]

**Affirmed.**

---

[5] Waldron's argument also ignores the district court's oral ruling at the close of the posttrial motion hearing. Although not required by rule or statute to explain its reasoning in denying the posttrial motion following the jury trial, the district court noted that Waldron's arguments for a new trial due to insufficient damages was based on "mere speculation." The court stated that it understood why the jury found that there was insufficient evidence for a damage award. The district court also explained its denial of Waldron's motion for judgment as a matter of law, noting that Waldron "has failed to show anything in the court file that the verdict was contrary to the evidence submitted in this case[.]" The oral ruling provided sufficient reasoning for Waldron to understand the district court's reasoning. Although the order could have included additional written findings of fact and conclusions of law, the district court was not required to do so. *Cf.* Minn. R. Civ. P. 52.01 (stating that "[i]t will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence").