*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0242**

Classic Auto Storage, LLC,
Appellant,

vs.

Restoration Technologies, Inc, et al.,
Respondents.

**Filed March 9, 2026**
**Affirmed**
**Larkin, Judge**

Hennepin County District Court
File No. 27-CV-21-12222

Jason S. Raether, Scott A. Ruhsam, Kennedy & Ruhsam Law Offices, P.A., Eagan, Minnesota (for appellant)

Brian J. Kluk, Daniel J. Singel, McCollum Crowley P.A., Bloomington, Minnesota (for respondent Restoration Technologies)

Cara C. Passaro, Stephen P. Couillard, Stich, Agnell, Kreidler & Unke, P.A., Minneapolis, Minnesota (for respondent Bigelow and Company)

Ryan L. Paukert, Mark A. Bloomquist, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for respondent Dominionaire Contracting)

        Considered and decided by Larkin, Presiding Judge; Cochran, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**LARKIN**, Judge

Appellant challenges the jury's special-verdict findings in a case involving negligence and breach-of-contract claims. Because the jury's findings and award of no damages were not palpably contrary to the evidence, we affirm.

## FACTS

Appellant Classic Auto Storage LLC contracted with respondent Restoration Technologies Incorporated (RTI) to perform masonry repair work on the east wall of Classic's building in Minneapolis. The contract provided that RTI was to repair the wall pursuant to the terms of a report drafted by a third-party engineering firm. RTI retained respondent Bigelow and Company Inc. as a subcontractor to do the work. Bigelow then retained respondent Dominionaire Contracting Inc. as a subcontractor to do the masonry repairs.

Classic was not satisfied with the repairs and refused to pay RTI's final invoice of $60,615. Classic then sued RTI alleging breach of contract and negligence.[1] RTI counterclaimed for breach of contract[2] based on Classic's failure to pay the final invoice.[3]

---

[1] Classic also alleged claims of quantum meruit and promissory estoppel. However, these claims were not submitted to the jury.

[2] RTI also counterclaimed for unjust enrichment. However, by the time of trial RTI only asserted its claim for breach of contract against Classic.

[3] RTI added Bigelow as a third-party defendant, and Bigelow added Dominionaire as a fourth-party defendant. The third- and fourth-party claims between RTI, Bigelow, and Dominionaire were resolved by agreement of the parties.

The claims were tried to a jury. Classic's theory of the case was that RTI had not replaced as much of the wall as the third-party engineering report recommended and that the new brick work did not match the color of the surrounding wall. Classic presented expert testimony that RTI did not follow industry standards, causing the work to look "sloppy." The expert testified that the aesthetic appearance of the building was affected. But because the expert was not a structural engineer, he did not testify regarding the strength or structure of the wall itself.

In response, respondents presented testimony that the primary purpose of the construction was safety and that their obligations were not related to the building's appearance. Witnesses testified that the contract did not specify a particular type or color of brick or mortar to be used, that Classic had stated that it "[didn't] really care what the building look[ed] like," and that RTI's proposal put Classic on notice that the brick repair would be "noticeable." RTI's owner testified that there was noticeable graffiti and patchwork on the exterior of the building prior to RTI performing any work. A representative of the engineering firm that authored the report testified that the percentage of the wall to be replaced was only a "general recommendation" and was "just an approximation of how much brick would need to be removed" to estimate the cost of the project. RTI's owner testified that it was unnecessary to remove the amount of brick noted in the report because some of the foundation was still "solid."

Prior to instructing the jury, the district court discussed proposed jury instructions with the parties, as well as a proposed a special-verdict form. The district court gave the parties an opportunity to object to the proposed jury instructions and special-verdict form.

3

Classic's only objection regarded the breach-of-contract language. Classic did not object to the negligence portions of the proposed instructions and special-verdict form.

As to negligence and direct causation, the district court instructed the jury that:

> Questions 5 through 12 on the Special Verdict Form ask you to determine whether certain parties [or] entities were negligent and whether the negligence was a direct cause of injury to Classic Auto's building.
>
> Specifically, you will be asked to determine negligence and direct cause as to:
>
>> (1) Restoration Technologies;
>> (2) Bigelow;
>> (3) Dominionaire; and
>> (4) Classic Auto.
>
> To establish fault, you must determine the following two issues as established by the greater weight of the evidence:
>
>> First, that the party was negligent; and
>> Second, that the party's negligence was a direct cause of the injury.
>
> Definition of "negligence"
>
> Fault consists of negligence. Negligence is the failure to use reasonable care.
>
> In determining whether any of the parties in this case was negligent, ask yourself what a reasonable entity would have done under all of the circumstances in this case.
>
> Negligence occurs when a person or entity:
>
>> 1. Does something a reasonable person or entity would not do; or
>> 2. Fails to do something a reasonable person or entity would do.
>
> Definition of "reasonable care"

4

> Reasonable care is the care a reasonable person or entity would use in the same or similar circumstances.
>
> . . . .
>
> Definition of "direct cause"
>
> A "direct cause" is a cause that had a substantial part in bringing about the injury.

The district court instructed the jury that "[e]vidence of standards, customs or practices within an industry is not conclusive. It is just one piece of evidence you may consider." As to damages, the district court instructed the jury that ". . . For injury to a building from negligent construction, damages are the reasonable cost of repair for restoring the damaged property to substantially the same condition it would be in without the negligence." But the district court did not provide a definition of "negligent construction." Finally, the district court instructed the jury regarding comparative negligence, including the possibility of finding Classic negligent and apportioning fault accordingly.

The jury made the following findings, which the district court adopted: (1) RTI substantially performed its contract with Classic and did not breach the contract; (2) Classic breached the contract and RTI was entitled to $60,615 in damages; (3) both Classic and RTI were negligent, but neither party's negligence was a direct cause of damage to Classic's building; and (4) neither Bigelow nor Dominionaire were negligent. The jury apportioned 50% of the negligence to Classic and 50% to RTI, and it awarded Classic no damages for RTI's negligence.

Classic appeals.

**DECISION**

Classic challenges the jury's special-verdict findings that it was "negligent in regard to work performed on [its] building" and attributing 50% of the negligence to Classic. Classic also challenges the special-verdict finding that RTI's negligence was not "a direct cause of damage" to Classic's building.

"A special verdict form is to be liberally construed to give effect to the intention of the jury and on appellate review it is the court's responsibility to harmonize all findings if at all possible." *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 618 (Minn. 2008) (quotation omitted). An appellate court will set aside special-verdict findings only if they are "perverse and palpably contrary to the evidence, or where the evidence is so clear as to leave no room for differences among reasonable persons." *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 888 (Minn. 2010) (quotation omitted). "The test is whether the special verdict answers can be reconciled in any reasonable manner consistent with the evidence and its fair inferences. If the answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 555 (Minn. 2008) (quotations and citation omitted).

**I.**

The elements of a negligence claim are "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011). Classic argues that no evidence was presented to show that Classic owed a duty of care.

6

Respondents counter that this argument is not properly before us on appeal because it was not raised in the district court.

"[T]he existence of a legal duty is an issue for the court to determine as a matter of law." *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn. 1985). Classic was on notice that the issue of its negligence—if any—would be submitted to the jury. The issue of Classic's negligence was incorporated into the final jury instructions and the final special-verdict form—necessarily presuming that Classic had a duty of care. Yet, Classic did not object to the negligence language in the jury instructions or in the special-verdict form. Nor did Classic otherwise argue that given the evidence presented at trial, it could not be negligent as a matter of law because it had no duty of care.

We generally consider "only those issues that the record shows were presented [to] and considered by the trial court." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). As an error correcting court, we cannot consider legal issues that are raised for the first time on appeal. *See id.* "It is an elementary principle of appellate procedure that a party may not raise an issue or argument for the first time on appeal and thereby seek appellate relief on an issue that was not litigated in the district court." *Doe 175 ex rel. Doe 175 v. Columbia Heights Sch. Dist., ISD No. 13*, 842 N.W.2d 38, 42 (Minn. App. 2014).

Moreover, the failure to object to a jury instruction constitutes a waiver of the issue on appeal. *Murphy v. City of Minneapolis*, 292 N.W.2d 751, 755 (Minn. 1980). And the failure to object to a special-verdict form "prior to its submission to the jury constitutes a

waiver of a party's right to object on appeal." *Kath v. Burlington N. R.R. Co.*, 441 N.W.2d 569, 572 (Minn. App. 1989), *rev. denied* (Minn. July 27, 1989).

In sum, despite its opportunity to do so, Classic did not argue to the district court that it could not be negligent as a matter of law because the evidence did not show that it owed a duty of care. Because that issue was not raised and determined in district court, we do not consider it on appeal. *See Thiele*, 425 N.W.2d at 582.

## II.

Classic contends that the jury's findings that it was negligent and that RTI's negligence was not the direct cause of any damages are not reasonably supported by the evidence. Classic relies on the fact that it did not participate in the masonry repair work. Classic asserts that any damage caused by negligence must be RTI's fault because RTI was the general contractor. Respondents counter that the jury's finding of negligence is not limited to the "negligent performance of construction work" and that the evidence supported the jury's findings under another negligence theory.

The district court did not instruct the jury regarding the definition of "negligent construction." Instead, it provided a general definition of negligence (i.e., the failure to use reasonable care). A general instruction on negligence requires the jury to consider all the relevant circumstances. *See Conover v. N. States Power Co.*, 313 N.W.2d 397, 400, 402 (Minn. 1981) (observing that "the general instruction on negligence required the jury to consider all of the circumstances involved in causing the injury"). Because the district court provided the jury with a general definition of negligence, the jury's finding that Classic was negligent was not limited to a negligent-construction theory.

8

RTI argues that the evidence showed that Classic failed to do something a reasonable person would do: it failed to accurately communicate regarding the building's aesthetics. For example, testimony indicated that Classic's primary concern was safety, that the contract did not specify a particular type or color of the brick or mortar to be used, that Classic had stated it "[didn't] really care what the building look[ed] like," and that RTI's proposal put Classic on notice that the brick repair would be "noticeable." Based on this evidence—and the negligence portions of the jury instructions and special-verdict forms that Classic agreed to—the jury could have found Classic negligent based on its failure to accurately communicate its aesthetic expectations.

Moreover, this theory explains how the jury could find RTI negligent without finding that RTI's negligence caused any damage to Classic's building (i.e., the negligence related to how the work looked on completion and not to the work's structural integrity). We also note that this theory is supported by the jury's findings that Bigelow and Dominionaire—who actually performed the work—were not negligent.

In sum, the jury's special-verdict answers can be reconciled in a reasonable manner consistent with the evidence and its fair inferences. And because those answers can be reconciled "on any theory," we do not disturb the verdict. *See Dunn*, 745 N.W.2d at 555.

### III.

Finally, Classic contends that the jury was not given the option of finding RTI negligent without awarding any damages. Respondents counter that the jury was told—without any objection from Classic—that it could conclude that no damages were warranted even if a party was negligent.

Here, the special-verdict form asked the jury to decide "[w]hat amount of money, *if any* will fairly and adequately compensate Classic Auto for the negligence of Restoration Technologies and its subcontractors Bigelow and Dominionaire?" The phrase "if any" clearly indicated that the jury could find both that RTI was negligent and that no damages resulted from that negligence. Because there was a basis for the jury to find RTI negligent without awarding any damages, we do not disturb the verdict. *See id*.

In conclusion, we emphasize that our decision is based on the evidence presented at trial and the unobjected-to negligence portions of jury instructions and special-verdict form, both of which are consistent with the jury's findings in this case. Because the jury's answers to special-verdict questions can be reconciled on "*any* theory," and Classic did not challenge the contributory-negligence theory on which RTI relied in district court, we do not disturb the verdict. *Id.*

**Affirmed.**